## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MEENAXI ENTERPRISE, INC.,

    Plaintiff,

      v.

SHAKTI GROUP USA LLC, PRATHIK
PATEL, MARUTI INTERNATIONAL INC.
d/b/a RADHEY FOODS, SUNITA ASOPA,
PRAYOSHA DISTRIBUTION LIMITED
LIABILITY COMPANY, LOMESHKUMAR
PATEL, AMIN TRADING LLC d/b/a ANSU
FOODS, HEMANG AMIN, TATHASTU
TRADING LLC, RASHMI MANISH
DESAI, SINGH & SINGH DISTRIBUTION
INC. and HARMANJEET BAKSHI,

    Defendants.

Civil Action No. 22-7383 (RK) (RLS)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Meenaxi Enterprise, Inc.'s

("Plaintiff") two motions for default judgment. One Motion for Default Judgment is against

Defendants Prayosha Distribution Limited Liability Company ("Prayosha") and Lomeshkumar

Patel ("Patel") (collectively, the "Prayosha Defendants"). (ECF No. 47.) The second Motion for

Default Judgment is against Defendants Maruti International Inc. d/b/a Radhey Foods ("Maruti")

and Sunita Asopa ("Asopa") (collectively, the "Maruti Defendants"). (ECF No. 86.) The Court has

carefully considered Plaintiff's Motions and their accompanying exhibits and resolves the matter

without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

For the reasons set forth below, Plaintiff's Motions are both **GRANTED**.

I.   **BACKGROUND**

A.   THE COMPLAINT

Plaintiff is a New Jersey corporation "engaged in the creation, research and development, refinement, production, marketing, importation and sale of a wide variety of food products and commodities, which are distributed primarily to Indian grocery stores in the United States." (Compl. ¶ 2, ECF No. 1.) Since approximately 2008, Plaintiff has used the BOURNVITA" trademark for chocolate powder and other related milk- and chocolate-based products. (*Id.* ¶ 18.) On September 11, 2012, the United States Patent and Trademark Office issued a registration for the mark, under Registration Number 4,206,026, which Plaintiff owns, giving Plaintiff full rights to use the BOURNVITA mark in the United States. (*Id.* ¶¶ 19–20.) Plaintiff alleges that its use of the BOURNVITA mark over the past decade has built brand recognition and a reputation for excellence among the public. (*Id.* ¶ 21–22.) Plaintiff has "invested significant time, money, [and] labor . . . in developing and using its BOURNVITA mark." (*Id.* ¶ 21.)

The Complaint names twelve (12) Defendants, both individuals and corporate entities, whom Plaintiff alleges imported BOURNVITA-branded chocolate milk powder into the United States for sale to Indian food grocery stores without Plaintiff's authorization. (*Id.* ¶ 23.) The Complaint alleges that the infringing goods, which Defendants sourced from India, bear the designation of Cadbury, which is owned by Mondelez International. (*Id.* ¶ 30.) The Complaint states that Mondelez International owns the BOURNVITA trademark in India, but Plaintiff owns it in the United States. (*Id.*) On November 15, 2022, the International Trade Commission found that importing Cadbury's BOURNVITA product into the United States was unlawful and issued a General Exclusionary Order prohibiting the import of infringing goods that violated Plaintiff's mark. (*Id.*)

The Complaint alleges that Defendants sell the infringing products "using the same packaging, and employing the same or similar marketing tactics, pricing structures and distribution schemes" as Plaintiff "in a deliberate effort to undermine Meenaxi's exclusive United States ownership rights in the BOURNVITA mark." (*Id.* ¶ 31.) Plaintiff contends that Defendants are "fully aware" that their actions violate Plaintiff's rights to the mark in the United States. (*Id.* ¶ 32.) Plaintiff also contends that Defendants sell infringing products "in the same channels of trade in which Meenaxi's BOURNVITA products are sold, targeting the same Indian groceries and the same class of consumers who regularly shop in such stores," which Plaintiff alleges has and will continue to "result in a likelihood of confusion, mistake or deception among members of the consuming public in the United States." (*Id.* ¶ 33–36.)

In support of its Motions, Plaintiff submitted two affidavits: one from Kaushik Gandhi, its Vice President and Manager of Operations, ("K. Gandhi Decl.", ECF No. 47-3), and one from Anil Ghandi, and officer and shareholder of Plaintiff, ("A. Gandhi Decl.", ECF No. 86-3). The affidavits state that Plaintiff "has undertaken extensive efforts to enforce its valuable rights in the BOURNVITA trademark." (K. Gandhi Decl. ¶ 7.) Plaintiff monitors the market for its product, investigates potential infringing products, and intercepts them (by purchasing them wholesale) from distributors. (*Id.*) Infringing BOURNVITA products cause Plaintiff "significant damage" through an "indeterminable number" of lost sales as well as "confusion in the marketplace" that "injures the goodwill" of Plaintiff's mark. (*Id.* ¶ 9.)

Plaintiff filed its Complaint on December 19, 2022. (*Id.*) The Complaint alleges five (5) causes of action: trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114, (*id.* ¶¶ 39–42); trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, (*id.* ¶¶ 43–44); false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a), (*id.* ¶¶ 45–

46); unfair competition in violation of N.J. Stat. Ann. § 56:4-1, *et seq.*, (*id.* ¶¶ 47–48); and common law unfair competition, (*id.* ¶¶ 49–50).

### B.   THE PRAYOSHA DEFENDANTS

The Complaint alleges that Patel is an Edison, New Jersey resident and officer/member of Prayosha, a New Jersey limited liability company with a principal place of business in Edison, New Jersey. (*Id.* ¶¶ 7–8.) Around October 6, 2022, Prayosha allegedly sold two (2) boxes containing infringing BOURNVITA chocolate milk powder to A To Z Indian, located in Iselin, New Jersey. (*Id.* ¶ 26.) Plaintiff's pending Motion includes a printout from the New Jersey Business Gateway indicating that Patel is Prayosha's sole member and its registered agent. (Ex. A to Mandel Decl., ECF No. 47-2 at 12.) The Complaint alleges that Patel "personally participated in, and supervised, directed, managed, approved and/or controlled, the infringing activities of Prayosha." (Compl. ¶ 8.)

On January 4, 2023, Plaintiff filed the executed summons for Prayosha, (ECF No. 20), and Patel, (ECF No. 22), reflecting service on the Prayosha Defendants on December 26, 2022. On January 31, 2023, Plaintiff filed a request for default against the Prayosha Defendants, which the Clerk of the Court entered the same day. (ECF No. 41.) On February 9, 2023, Plaintiff filed the pending Motion for Default Judgment against the Prayosha Defendants. (ECF No. 47.)

Plaintiff's Motion against Prayosha and Patel is supported by a brief, (ECF No. 47-1), a declaration of Plaintiff's attorney, Richard S. Mandel, ("Mandel Decl. 1," ECF No. 47-2), and the affidavit of Kaushik Gandhi, (*see* K. Gandhi Decl.).

### C.   THE MARUTI DEFENDANTS

The Complaint alleges that Asopa is a Monroe Township, New Jersey resident and officer of Maruti, a New Jersey corporation with a principal place of business in Monroe Township, New

Jersey. (Compl. ¶¶ 5–6.) Around August 15, 2022, Maruti allegedly sold twenty (20) boxes containing infringing BOURNVITA chocolate milk powder to A to Z Indian, located in Princeton, New Jersey. (*Id.* ¶ 25; *see also* Ex. 1 to A. Gandhi Decl.) Plaintiff's Motion includes import records accessible through ImportGenius.com, a compilation of customs data records, that shows Maruti has imported nearly 20,000 cartons of BOURNVITA products since 2018, (A. Gandhi Decl. ¶ 9; *see also* Ex. 2 to A. Gandhi Decl.), which Plaintiff estimates would have resulted in $100,000 in profit for Maruti. (A. Gandhi Decl. ¶ 9.) Asopa is registered with the New Jersey Department of State as the registered agent of Maruti. ("Mandel Decl. 2", ECF No. 86-2 ¶ 3.) The Complaint alleges that Asopa "personally participated in, and supervised, directed, managed, approved and/or controlled, the infringing activities of Maruti." (*Id.* ¶ 6.)

On January 4, 2023, Plaintiff filed an executed summons for Maruti, (ECF No. 21), and Asopa, (ECF No. 19), reflecting service on the Prayosha Defendants on December 23, 2022. An attorney representing the Maruti Defendants contacted Plaintiff's counsel on January 17, 2023. (Mandel Decl. 2 ¶ 5.) Plaintiff held off seeking default against them while discussions between the parties progressed over several months, but the parties did not resolve the matter, and the Maruti Defendants never appeared in the action or otherwise responded to the Complaint. (*Id.* ¶¶ 6–7.) On May 31, 2023, Plaintiff filed a request for default against the Maruti Defendants, which the Clerk of the Court entered the following day. (ECF No. 82.) On June 7, 2023, Plaintiff filed the pending Motion for Default Judgment against the Maruti Defendants. (ECF No. 86.)

Plaintiff's Motion against the Maruti Defendants is likewise supported by Plaintiff's moving brief, (ECF No. 86-1), a second declaration from Plaintiff's attorney, (*see* Mandel Decl. 2), and the affidavit of Anil Gandhi, an officer and shareholder of Plaintiff, (*see* A. Gandhi Decl.).

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 55 permits a party to apply for, and the court to enter, default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits . . . .'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the resolution of claims on the merits, 'this Court does not favor entry of defaults and default judgments.'" *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Before entering a default judgment pursuant to Rule 55(b), a court performs a thorough analysis of the plaintiff's claims and entitlement to relief. *First*, the defendant must have been properly served. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the court must have subject matter jurisdiction over the dispute and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017). *Third*, the complaint must sufficiently state a cause of action. *See Chanel, Inc.*, 558 F. Supp. 2d at 536 (D.N.J. 2008) (citing *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). *Fourth*, the court must weigh the three default judgment factors: (1) whether the party subject to the default has a meritorious defense, (2) whether the party seeking default would be prejudiced without it, and (3) whether the default resulted from the defendant's culpable conduct. *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at *7 (D.N.J. Apr. 20, 2021) (citing *Days Inns Worldwide, Inc. v.*

*Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *2 (D.N.J. July 24, 2015)). *Finally*, the plaintiff

must have proven damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

## III.   **DISCUSSION**

### A.      **Proof of Service**

A court may only enter default judgment against defendants who were properly served.

*Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023,

at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19

(3d Cir. 1985)). An individual may be served by "delivering a copy of the summons and of the

complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). When located in the United

States, an entity defendant, such as a corporation or LLC, may be served "by delivering a copy of

the summons and of the complaint to an officer, a managing or general agent, or any other agent

authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).

Plaintiff adequately served the four Defendants here. The individual Defendants—Patel

and Asopa—were served personally. (*See* ECF Nos. 19, 22.) The entity Defendants—Prayosha

and Maruti—were served through their registered agent (Prayosha) or officer (Maruti). (*See* ECF

Nos. 20, 21.) Since being served with the summons and complaint the Prayosha and Maruti

Defendants have not filed an appearance, answered the Complaint, or otherwise engaged in the

litigation process. Thus, the threshold question for entering default judgment is met here. *See Loc.*

*365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *3

(D.N.J. May 18, 2021) (citing *Gold Kist, Inc.*, 756 F.2d at 18–19).

### B.      **JURISDICTION**

Before entering default judgment, "the district court has an affirmative duty to look into its

jurisdiction both over the subject matter and the parties." *HICA Educ. Loan Corp. v. Surikov*,

No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

Here, the Court has subject matter jurisdiction over all counts of the Complaint. Counts One, Two, and Three allege violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). (Compl. ¶¶ 39–46) The Court's subject matter jurisdiction over such federal infringement claims is well established. *See* 28 U.S.C. §§ 1331, 1338(a); 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."). Because Plaintiff's New Jersey and common law claims for unfair competition, (Compl. ¶¶ 47–50), arise from the same case or controversy as the federal trademark claims, the Court may exercise supplemental jurisdiction over those claims as well. 28 U.S.C. § 1367; *see also Crocs, Inc. v. Dr. Leonard's Healthcare Corp.*, No. 21-13583, 2022 WL 3754858, at *2 (D.N.J. Aug. 30, 2022) (finding subject matter jurisdiction in trademark infringement case "because the complaint asserts federal trademark claims and related state law claims over which the Court may exercise supplemental jurisdiction"); *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at *3 (D.N.J. Apr. 20, 2021) (same).

The Court has personal jurisdiction over all four Defendants. Prayosha is a New Jersey-registered limited liability company. (Compl. ¶ 7.) Maruti is a New Jersey corporation. (*Id.* ¶ 5.) The Court has personal jurisdiction over these entities based on their place of incorporation. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Because Patel and Asopa are both New Jersey residents, (Compl. ¶¶ 6, 8), the Court has personal jurisdiction over them as well. *See Daimler AG,*

571 U.S. at 137 (noting that an individual's "domicile" is "the paradigm forum for the exercise of general jurisdiction").[1]

### C.   LIABILITY

Before entering default judgment, the Court must determine whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (quoting *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)); *see also Animal Science Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("A litigant's failure to state a claim upon which relief may be granted . . . prevents the presiding court from entering a default judgment."). Similar to what is required of a complaint to survive a motion to dismiss for failure to state a claim, a plaintiff must "establish[] that the essential elements of the pleaded claims are present and state[] factual allegations in support of these elements." *Animal Science Prods., Inc.*, 596 F. Supp. 2d at 848.

### 1.   Counts Two and Three

Counts Two and Three of the Complaint allege two violations of the Lanham Act: trademark infringement in violation of 15 U.S.C. § 1114, (Compl. ¶¶ 43–44), and false designation of origin in violation of 15 U.S.C. § 1125(a), (*id.* ¶¶ 45–46). The elements of each claim are

---

[1] Although the Court can exercise general personal jurisdiction over the four Defendants here, other bases for personal jurisdiction exist as well. The Court likely can exercise personal jurisdiction over the individual Defendants because they were personally served in New Jersey. *See* Fed. R. Civ. P. 4(e)(1); Fed. R. Civ. P. 4(h)(1)(A); N.J. Ct. R. 4:4-4(a). Additionally, because Defendants sold the infringing goods at issue in New Jersey and Plaintiff is a New Jersey corporation, (Compl. ¶¶ 1, 16, 25–26), the Court may also exercise specific personal jurisdiction over them. *See MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 384 (D.N.J. 2016) ("Specific jurisdiction requires that the defendant 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985))).

identical. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards."). Proving either violation under the Lanham Act requires a plaintiff to show that "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Id.* at 210 (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)). As Plaintiff's citations illustrate, Courts within this District routinely enter default judgment against Defendants on similar infringement claims under the Lanham Act and state law.

All three elements are met here. For the first two elements, Plaintiff has established that it owns a "valid and legally protectable mark" in BOURNVITA. *A & H Sportswear, Inc.*, 237 F.3d at 210. The first two elements are met when "the mark has been registered" and "has been in continuous use for five consecutive years," and "there has been no adverse decision concerning the registrant's ownership or right to registration." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citing *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 n.7 (3d Cir. 1994)). Plaintiff's use of the BOURNVITA mark since 2008 has been "extensive and continuous." (Compl. ¶¶ 18, 22.) The United States Patent and Trademark Office issued a mark for BOURNVITA on September 11, 2012 under Registration Number 4,206,026. (*Id.* ¶¶ 19–20.) This constitutes "prima facie evidence of the validity and ownership of a disputed mark" sufficient to meet Plaintiff's burden. *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *2 (D.N.J. June 14, 2010); *see also Crocs, Inc.*, 2022 WL 3754858, at *3 (same).

Additionally, Plaintiff has pled that Defendants' "use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc.*, 237 F.3d at 210. A "likelihood

of confusion" exists "when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991) (citation and quotation marks omitted). When two products "directly compete with each other, a court 'need rarely look beyond the mark itself' to determine the likelihood of confusion." *A & H Sportswear, Inc.*, 237 F.3d at 211 (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 462 (3d Cir. 1983)). Here, Plaintiff claims that Defendants are importing and selling a product identical to the one Plaintiff sells in the United States, except that only Plaintiff holds the mark for sales in the United States. The Complaint alleges that Defendants use the identical BOURNVITA mark in connection with the sale of identical products. (Compl. ¶¶ 25–26, 30.), Therefore, Plaintiff has adequately established the likelihood of confusion. *See La Fabril, S.A. v. Mi Tierra Foods, LLC*, No. 21-18150, 2021 WL 6010374, at *4 (D.N.J. Dec. 20, 2021) (finding likelihood of confusion because the infringing product "bears the exact same mark" and "is used on the same good, vegetable oil, since it is a relabeled product").

### 2.    Count One

Count One of the Complaint alleges trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114. (*Id.* ¶¶ 39–42.) "To establish trademark counterfeiting . . . 'the record must establish that (1) defendants infringed a registered trademark in violation of the Lanham Act . . . and (2) [defendants] intentionally used the trademark knowing it was counterfeit or was willfully blind to such use.'" *Coach, Inc.*, 2010 WL 2521444, at *3 (quoting *Chanel*, 558 F. Supp. 2d at 537.

The Complaint sufficiently states a claim for trademark counterfeiting. As noted in the section above, Plaintiff has sufficiently pled trademark infringement, making out the first element.

Therefore, Plaintiff need only show that Defendants' intentionally used the mark with either knowledge or willful blindness to the fact that it was counterfeit. *See Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *4 (noting that a plaintiff that established its Lanham Act trademark infringement claim only had to show willfulness in order to establish to make out a claim for trademark counterfeiting); *Coach, Inc.*, 2010 WL 2521444, at *3 (same).

Taking the Complaint's allegations as true, Plaintiff has alleged sufficient facts to establish Defendants' willfulness here. Plaintiff "has developed substantial public recognition . . . in the BOURNVITA mark" over years of "extensive and continuous use." (Compl. ¶ 22.) Each Defendant is "fully aware of [Plaintiff's] superior United States trademark rights in the BOURNVITA mark." (*Id.* ¶ 32.) Because Defendants knew of Plaintiff's longstanding "use and ownership" of the mark in the United States market, their conduct reflects an "intent to exploit the goodwill and brand recognition associated with [Plaintiff's] BOURNVITA trademark." (*Id.* ¶ 41.) The Court finds these allegations sufficient to show willfulness, and therefore to make out a claim of trademark counterfeiting. *See, e.g., Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *6 (finding that plaintiff had stated a claim for federal trademark counterfeiting where defendants were "professional sellers" who "should have been aware" that the infringing products did not comply with U.S. labeling requirements); *La Fabril, S.A.*, 2021 WL 6010374, at *4 (finding willful infringement where defendant was "a professional seller of various food products" and therefore "knew or should have known of the labeling requirements for food products" and that the plaintiff "was the exclusive source" for the authentic product).

### 3. Counts Four and Five

Counts Four and Five allege unfair competition in violation of N.J. Stat. Ann. § 56:4-1, *et seq.*, (*id.* ¶¶ 47–48), and common law unfair competition, (*id.* ¶¶ 49–50). It is well established that

the elements for an unfair competition claim under the New Jersey Unfair Competition Law and the common law are identical to those under the Lanham Act. "Because the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law, the Court's [Lanham Act analysis] extends to Plaintiff's state law claims as well." *Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006)); *see also Emerson Radio Corp. v. Emerson Quiet Kool Co., Ltd.*, No. 17-5358, 2018 WL 1169132, at *3 (D.N.J. Mar. 6, 2018) ("The pleading standards are the same for trademark infringement and unfair competition claims under state and federal law."); *Crocs, Inc.*, 2022 WL 3754858, at *3 (same). Because the Court finds that Plaintiff has adequately pled its infringement claims under the Lanham Act, Plaintiff has likewise pled infringement claims under the New Jersey Unfair Competition Law and common law.

### 4.    Claims against Individual Defendants

Officers and employees of an infringing corporate defendant are not automatically presumed to be liable for the infringing acts of the corporation. However, a "corporate officer who knowingly participates in trademark infringement 'can be held personally liable, jointly and severally, with the corporate defendant.'" *Prime Hookah Inc. v. FCM Online LLC*, No. 21-13915, 2022 WL 1115361, at *3 (D.N.J. Apr. 14, 2022) (quoting *Columbia Pictures Indus., Inc. v. Redd Home, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984)). The Third Circuit has held that "an individual's status as a principal in an infringement venture is strong evidence of liability for contributory infringement." *Star Pac. Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 230–31 (3d Cir. 2014) (citing *Columbia Pictures Indus., Inc.*, 749 F.2d at 160); *see also id.* ("[T]he right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials— even in the absence of actual knowledge that the copyright monopoly is being impaired—the

purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation." (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963))).

The allegations against Patel and Asopa from the Complaint are largely identical, claiming that each is an "officer" of their respective companies "who personally participated in, and supervised, directed, managed, approved and/or controlled, the infringing activities" of their respective companies. (Compl. ¶¶ 6, 8.) Indeed, Patel is Prayosha's sole member, and Patel and Asopa are their respective companies' registered agents. (Ex. A to Mandel Decl. 1; Mandel Decl. 2 ¶ 3.) Plaintiff has sufficiently alleged the individuals' involvement in the infringement to hold them liable. *See Prime Hookah Inc.*, 2022 WL 1115361, at *3 (granting default judgment against individual defendant officers of infringing entities where the complaint alleged that they "operated and directed the company" and "shared merchandise and profits" from the infringing conduct); *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 417 (D.N.J. 2005) (finding that individual officers could be liable for infringement where they were alleged to have "personally had actual or constructive knowledge of—and materially contributed to—infringement, that they personally had the ability to supervise or control that infringement, and that their failure to do so resulted in personal financial benefit").

### D.   DEFAULT JUDGMENT FACTORS

"Before imposing the extreme sanction of default [judgment], district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J.

2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court finds that each of these three factors weighs in favor of entering default judgment here.

First, the Court's review of the law and the facts alleged in the Complaint reveals no meritorious defense open to the Prayosha or Maruti Defendants. Of course, "evaluation of the first factor is made difficult by defendants' failure to answer or to oppose the motion for default judgment." *Loc. 365 Pension Fund*, 2021 WL 1976700, at *3. As explained above, the record before the Court establishes Defendants' liability. This conclusion is bolstered by the numerous Courts in this District that have considered comparable claims at the same procedural posture and granted default judgment.[2]

The second and third factors also weigh in favor of granting default judgment. Defendants were properly served but failed to engage in the litigation in any way. "It is clear that the plaintiffs have been prejudiced by this dereliction because they have been 'prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion.'" *Loc. 365 Pension Fund*, 2021 WL 1976700, at *5 (quoting *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4); *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) ("[Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant."). Furthermore, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)). In short, Defendants' complete failure to engage in the litigation

---

[2] *See, e.g.*, *Crocs, Inc.*, 2022 WL 3754858 at *5; *La Fabril, S.A.*, 2021 WL 6010374, at *5; *Tri-Union Seafoods, LLC*, 2021 WL 1541054, *3; *Coach, Inc.*, 2011 WL 1882403, at *6.

process evidences their culpable conduct and the prejudice to Plaintiff if Plaintiff is not permitted to recover through the Court entering default judgment.

### E.   REMEDIES

While the Court accepts the Complaint's factual allegations as true, Plaintiff must nonetheless prove the amount of damages in order for the Court to enter default judgment in its favor. *See Comdyne I, Inc.*, 908 F.2d at 1149; *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) ("[C]ourts . . . need not accept the plaintiff's factual allegations regarding damages as true." (citing *Chanel, Inc.*, 558 F. Supp. 2d at 536)). In order to determine whether Plaintiff has sufficiently proven damages, Rule 55(b) permits the Court to "conduct such hearings or order such references as it deems necessary and proper." *Comdyne I, Inc.*, 908 F.2d at 1149 (quoting Fed. R. Civ. P. 55(b)(2)). However, the Court is not required to conduct such hearings "as long as it ensures that there is a basis for the damages specified in the default judgment," *Trucking Emps. of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citation and quotation marks omitted), such as when "detailed affidavits and documentary evidence" have been submitted to support the plaintiff's claim for damages, *Simone*, 2013 WL 3772532, at *2–3 (citation omitted). Furthermore, when a plaintiff seeks statutory damages, costs, and attorney's fees, a court may award damages without a hearing. *See Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *3 (D.N.J. Mar. 13, 2013).

### 1.   Statutory Damages

The Lanham Act grants several options for a successful plaintiff to recover against an infringing defendant. *See generally* 15 U.S.C. § 1117. Plaintiff seeks statutory damages of $60,000 against the Prayosha Defendants pursuant to 15 U.S.C. § 1117(c). (ECF No. 47-1 at 11–12.)

Against the Maruti Defendants, Plaintiff seeks $300,000, which reflects treble the $100,000 in profits Maruti earned from its infringement, pursuant to 15 U.S.C. § 1117(a)–(b). (ECF No. 86-1 at 12.)

Where a plaintiff elects to recover statutory damages for use of a counterfeit mark, the plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Alternatively, "if the court finds that the use of the counterfeit mark was willful," the Court may award up to $2,000,000 per counterfeit mark. 15 U.S.C. § 1117(c)(2). "In general, 'statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringer's control and is not disclosed.'" *Delta Air Lines, Inc. v. Fly Tech, LLC*, No. 16-2599, 2018 WL 1535231, at *3 (D.N.J. Mar. 29, 2018) (quoting *AARP v. Sycle*, 991 F. Supp. 2d 224, 230 (D.D.C. 2013)); *see also Chanel, Inc.*, 558 F. Supp. 2d at 538 (D.N.J. 2008) ("[The plaintiff] cannot prove actual damages; this is largely because [the defendant] did not respond in this case or provide evidence from which the extent and profitability of his counterfeiting operation could be determined.").

One factor the Court considers in awarding damages is the value of the infringed mark to the Plaintiff. *See Crocs, Inc.*, 2022 WL 3754858, at *5 (citing *Delta Air Lines, Inc.*, 2018 WL 1535231, at *3). Plaintiff has adequately demonstrated the value of the BOURNVITA mark. Plaintiff has used the mark for approaching fifteen years. (Gandhi Decl. ¶ 3.) Plaintiff states that the mark is a valuable asset that generates "substantial revenue" and in which the company has invested significant time, money, and labor. (*Id.* ¶ 5.) The mark's value to Plaintiff is evidenced by its "extensive efforts" to enforce its rights, such as by obtaining a General Exclusionary Order from the International Trade Commission prohibiting import of goods that infringe the

BOURNVITA mark. (*Id.* ¶ 7.) Plaintiff also monitors the United States market for entities that import infringing products for wholesale distribution. (*Id.*)

Also relevant to the Court's award of statutory damages is whether the infringing conduct was willful. When a defendant "wholly fail[s] to respond to [a plaintiff's] Complaint and Motion, 'the Court can infer that the trademark infringement was indeed willful.'" *InnovAsian Cuisine Enters. v. Innovasian Taco*, No. 19-16296, 2020 WL 3969917, at *7 (D.N.J. July 14, 2020) (quoting *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. 08-4248, 2009 WL 1687484, at *7 (D.N.J. June 16, 2009)); *see also Chanel, Inc.*, 558 F. Supp. 2d at 538 ("By defaulting, [the defendant] admits [the plaintiff's] allegations that he acted willfully and had knowledge of [the plaintiff's] ownership of the marks at issue, including its exclusive rights to use and license the marks and the goodwill associated with the marks."). This Court likewise views Defendants' silence in light of this lawsuit as evidence of willful infringement.

Finally, the Court weighs the scope of Defendants' infringing activities. Plaintiff has offered evidence all Defendants' infringing activity is conducted wholesale—to the wholesaler A to Z Indian—rather than directly to consumers. *See La Fabril, S.A.*, 2021 WL 6010374, at *5 (noting that "the nature of the business of [the defendant] is typically done on a wholesale level"); *Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *8 (accepting plaintiff's assertion that the defendants' business is "closer to the wholesale variety than a single storefront operation"). The earliest Plaintiff suggests the Prayosha Defendants began selling infringing products is 2022. (K. Gandhi Decl. ¶ 8; *see also* Ex. 1 to K. Gandhi Decl., ECF No. 47-3 at 7.) Plaintiff's affidavit also states that they have "reason to believe that Prayosha has made many additional infringing sales of the same BOURNVITA goods to other entities." (K. Gandhi Decl. ¶ 8.)

With respect to the Maruti Defendants, Plaintiff offers an August 15, 2022 invoice reflecting Maruti's sale of twenty boxes of infringing product to a wholesaler, for a total amount of $940. (A. Ghandi Decl. ¶ 8; *see also* Ex. 1 to A. Gandhi Decl., ECF No. 86-3 at 7.) Plaintiff also shows that Maruti has imported almost 20,000 cartons of BOURNVITA products since 2018, which Plaintiff's employee asserts would result in a $100,000 profit to Maruti. (Anil Ghandi Decl. ¶ 9; *see also* Ex. 2 to Anil Gandhi Decl., ECF No. 86-3 at 9–16.)

For the Maruti Defendants, Plaintiff seeks treble damages of the amount of Maruti's profit from the infringing sales, as permitted by 15 U.S.C. § 1117(a)–(b). Plaintiff's sole evidence in support of Maruti's $100,000 in profit are its employee's statement that this is Maruti's likely profit from importing 20,000 cartons. However, the Court may not accept allegations of actual damages without sufficient support. *See Comdyne I*, 908 F.2d at 1149. The Court finds that Plaintiff has not offered sufficient evidence showing Maruti's profit, such that awarding actual damages is appropriate under 15 U.S.C. § 1117(a). In *Chanel, Inc.*, the sole case Plaintiff cites in seeking actual treble damages, (ECF No. 86-1 at 12), the Court "decline[d] to adopt [the plaintiff's] estimates of actual damages" and instead awarded statutory damages. 558 F. Supp. 2d at 538.

The Court adopts the same approach here and will award statutory rather than claimed actual damages. As noted above, the BOURNVITA mark is valuable to Plaintiff, which earns substantial profit from it and has expended significant efforts to protect it. Against the Prayosha Defendants, Plaintiff offers evidence of wholesale distribution, even though the exact scale of the distribution is not clear. The infringing activities have been going on since at least 2022. Defendants' failure to respond to this suit evidences the willfulness of their infringement.

Plaintiff offers compelling evidence against the Maruti Defendants. Maruti's infringing activities began in 2018, and Maruti has imported tens of thousands of cartons of infringing

products since. The evidence of the Maruti Defendants' willfulness is even stronger, as they not only failed to litigate this matter but exchanged "numerous communications" with Plaintiff's counsel regarding the matter. Therefore, in light of the scale and willfulness of the Prayosha and Maruti Defendants' infringement and the need to deter them and others from infringing on Maruti's mark, the Court finds the award of statutory damages against all Defendants is appropriate here. *See La Fabril, S.A.*, 2021 WL 6010374, at *5 ("Courts have wide discretion when evaluating appropriate damages, and may consider deterrence." (citing *Coach, Inc.*, 2011 WL 1211390, at *6)).

The Court now must determine the appropriate amount of statutory damages. "The Lanham Act does not provide guidelines for courts to use in determining an appropriate award, but instead leaves it to each court's discretion to award an amount it 'considers just.'" *Delta Air Lines, Inc.*, 2018 WL 1535231, at *3 (quoting 15 U.S.C. § 1117(c)(2)). However, "[b]ecause statutory damages are meant to serve as a substitute for actual damages[,] the Court should discern whether the requested damages 'bear some relation to the actual damages suffered.'" *Id.* (quoting *Coach, Inc.*, 2011 WL 1882403, at *6). "In cases where distribution of infringing goods is not widespread, courts have awarded $10,000 in statutory damages per infringement." *La Fabril, S.A.*, 2021 WL 6010374, at *5.

In light of the facts of the case and after reviewing awards in comparable cases, the Court finds that statutory awards of $30,000 against the Prayosha Defendants and $100,000 against the Maruti Defendants are appropriate. *See, e.g.*, *Crocs, Inc.*, 2022 WL 3754858, at *6 (awarding $60,000 in statutory damages, comprising $30,000 per infringed mark, where the product "generated substantial income" for the plaintiff); *La Fabril, S.A.*, 2021 WL 6010374, at *6 (awarding $50,000 in statutory damages against a defendant whose activities the court found were

"willful, prolonged and not similar to traditional, single retail stores"); *Tri-Union Seafoods, LLC*, 2021 WL 1541054, at \*8 (awarding $25,000 in statutory damages against each of two defendants).

A significant award is appropriate given the Prayosha Defendants' failure to participate in this suit and clear evidence of the mark's value to Plaintiff. However, this is still significantly below the $2 million award permitted because of Defendants' willful conduct. In fact, this amount is half of what Plaintiff seeks, which the Court finds appropriate in light of the limited evidence Plaintiff offers of extensive distribution by the Prayosha Defendants. While the Court found that Plaintiff did not establish that Maruti's actual profits from its infringing activities were $100,000, based on the strong evidence of Maruti's distribution and willfulness, the Court awards $100,000 in statutory damages against the Maruti Defendants. The failure of the Maruti Defendants to engage in the litigation, notwithstanding the communications between them and Plaintiff's counsel, evidences willful disregard for the judicial process. The $100,000 award, however, is well below the $2 million amount allowed under the law.

### 2.  Injunctive Relief

Plaintiff also seeks permanent injunctive relief to prevent Defendants' future infringement. The Court may grant an injunction in an infringement action pursuant to 15 U.S.C. § 1116(a). To establish its right to a permanent injunction, a plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted); *see also Coach, Inc.*, 2011 WL 1882403, at \*9 (granting injunctive relief on a plaintiff's default judgment motion in a Lanham Act case).

Plaintiff has established all four elements here. *First*, there is irreparable harm based on the potential for continued infringement. "[O]nce the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 1976 (3d Cir. 1990)). *Second*, monetary relief would be unable to "compensate for the injury to [Plaintiff's] reputation or necessarily prevent future trademark infringement." *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *9 (D.N.J. June 14, 2010) (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, No. 07-2620, 2009 WL 3633882, at *5 (D.N.J. Oct. 28, 2009)). *Third*, the balance of harms weighs in Plaintiff's favor. "The only hardship imposed upon the Defendants is that they obey the law," compared with the potential threat to Plaintiff of "loss of reputation and sales." *Coach, Inc.*, 2011 WL 1882403, at *9. Finally, the public interest is also served by enjoining future infringement. "Issuing an injunction will serve the public interest goals of preventing consumer confusion and the trademark holder's property interest." *Coach, Inc.*, 2011 WL 1882403, at *9.

### 3.   Attorney's Fees

Plaintiff seeks an award of attorney's fees pursuant to the Lanham Act, which provides that "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). "While the statute does not explicitly define the term 'exceptional,' generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (D.N.J. 2002) (citing *Securacomm Consulting, Inc. v. Securacomm, Inc.*, 224 F.3d 273, 280 (3d Cir. 2000)). Courts in this district regularly award attorney's fees on a plaintiff's default judgment motion in an infringement case. *See, e.g., Crocs, Inc.*, 2022 WL

3754858, at *6; *La Fabril, S.A.*, 2021 WL 6010374, at *6; *Piquante Brands Int'l, Ltd.*, 2009 WL 1687484, at *7. The Court has already found that Defendants' conduct shows willful infringement. Therefore, the only question before the Court is whether the fees Plaintiff seeks are reasonable.

Even in a default judgment, a plaintiff must prove the amount of fees sought to the court's satisfaction. *See Piquante Brands Int'l, Ltd.*, 2009 WL 1687484, at *7 (D.N.J. June 16, 2009) (awarding fees in an infringement default but requiring "detailed proof submitted to this Court at a damages hearing"); *Mister Softee, Inc. v. Omar*, No. CV 23-3845, 2023 WL 6619637, at *5 (D.N.J. Oct. 11, 2023) (same).

Plaintiff seeks $11,738.25 in attorneys' fees from the Prayosha Defendants, (ECF No. 47-1 at 15), and $9,130.25 from the Maruti Defendants, (ECF No. 87-1 at 15). They establish fees based on two attorney declarations that delineate the amount of time each timekeeper at his firm spent on drafting the Complaint, split out among specific dates and tasks. (Mandel Decl. 1 ¶¶ 5–8; Mandel Decl. 2 ¶¶ 10–13.) The declarations also state the experience and normal billing rates for each timekeeper. (Mandel Decl. 1 ¶ 12; Mandel Decl. 2 ¶ 18.) Plaintiff's attorney certifies the cost of preparing the Complaint in this matter totaled $7,276.50, and seeks $1,212.75 from the Prayosha Defendants as well as $1,212.75 from the Maruti Defendants, which reflects the proportionate cost of preparing the Complaint split among the twelve Defendants. Plaintiff also seeks $10,525.50 from Prayosha and Patel for preparing the instant motion, (Mandel Decl. 1 ¶¶ 9–11, 14), and $7,917.50 from Maruti and Asopa for preparing the instant motion, (Mandel Decl. 2 ¶¶ 14–17, 20.)

The Court finds Plaintiff's requested fees reasonable and that Plaintiff has adequately supported its claims for the time spent litigating this matter, fairly apportioned among each Defendant. Courts in this District routinely award comparable amounts on plaintiffs' default

judgment motions in Lanham Act infringement cases in light of similar evidence offered by the plaintiffs. *See, e.g.*, *Bethanie L. Mattek, LLC v. Donnay USA Ltd*, No. 13-6188, 2016 WL 6542710, at *2 (D.N.J. Nov. 1, 2016) (awarding $31,862.90 in attorney's fees); *World Ent., Inc. v. Brown*, No. 09-5365, 2011 WL 2036686, at *3 (E.D. Pa. May 20, 2011), *aff'd*, 487 F. App'x 758 (3d Cir. 2012) ($183,959.30); *Am. Registry of Radioloigic Technologists v. Sisk*, No. 14-6403, 2015 WL 1205021, at *2 (D.N.J. Mar. 17, 2015) ($8,008.07); *Rutt's Hut, Inc. v. Mutt's Hut Int'l*, No. 11-1350, 2011 WL 2923697, at *2 (D.N.J. July 18, 2011) ($21,621.54); *see also G6 Hosp. Franchising LLC v. HI Hotel Grp., LLC*, No. 11- 2176, 2016 WL 1109211, at *1 (M.D. Pa. Mar. 22, 2016) (awarding $349,249.80 in attorneys' fees against corporate and individual defendants jointly and severally in Lanham Act case). Therefore the Court grants Plaintiff's request for attorney's fees in the amount of $11,738.25 against the Prayosha Defendants and $9,130.25 against the Maruti Defendants.

## IV.    <u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff's Motions for Default Judgment, (ECF Nos. 47,

86), are **GRANTED**, default judgment and a permanent injunction are entered against the

Prayosha and Maruti Defendants, and Plaintiff is awarded statutory damages and attorney's fees

in the amounts specified above. Two Orders—one regarding the Prayosha Defendants and one

regarding the Maruti Defendants—accompany this Opinion.

_____

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

<u>Dated</u>: November 1, 2023